LEGAL AID FOUNDATION OF LOS
    ANGELES
Manuel Villagomez, Esq., SBN 308457
mvillagomez@lafla.org
1550 W 8th St.
Los Angeles, CA 90017-4316
Tel: 213-640-3817 | Fax: 213-640-3850

DISABILITY RIGHTS EDUCATION &
    DEFENSE FUND
Michelle Uzeta, Esq., SBN 164402
muzeta@dredf.org
3075 Adeline Street, Suite 210
Berkeley, CA 94703
Tel: 510-644-2555 | Fax: 510-841-8645

Attorneys for Plaintiff,
Noor Tamshoona

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Noor Tamshoona,** | Case No. 2:24-cv-00562 |
| Plaintiff, | **FIRST AMENDED Complaint for Injunctive Relief and Damages for Violations of**: |
| v. | |
| **Beach Front Property Management, Inc; and Does 1-10 Inclusive,** | 1. The Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq.; |
| Defendants. | 2. California Fair Employment and Housing Act, Cal. Gov't Code § 12955 et seq.; |
| | 3. California Unruh Civil Rights Act, Cal. Civ. Code § 51; |
| | 4. Disabled Persons Act Cal. Civ. Code § 54.1 (b); and |
| | 5. Negligence |
| | **Jury Trial Demanded** |

1

## INTRODUCTION

1.     This is an action for injunctive relief and damages against Beach Front Property Management, Inc., and Does 1-10, inclusive (collectively "Defendants"), for housing discrimination based on disability.

2.     From 2010 to 2022, Plaintiff Noor Tamshoona ("Plaintiff") had been provided with access to, and use of, a locked storage room located in the parking garage at the apartment building where she lives to store and charge her power wheelchair. Plaintiff was provided keys to the storage unit as an accommodation for her disability, and in light of physical access barriers at the property, including stairs, that preclude her from being able to drive the wheelchair into her unit. Plaintiff utilized this accommodation without issue for approximately 12 years.

3.     In 2022, after assuming management responsibilities at the property, Defendant withdrew Plaintiff's accommodation, and has refused to reinstate it unless Plaintiff agrees to pay a steep surcharge. Defendant has changed the locks on the storage room and refused to provide Plaintiff with keys so she can freely and independently access and use her wheelchair as she had in the past.

4.     This action is brought pursuant to the Fair Housing Amendments Act ("FHAA"), 24 U.S.C. § 3601 et seq., as well as related California statutes. Plaintiff also asserts a claim for negligence, as an additional or alternative theory of liability.

5.     Through this action, Plaintiff seeks injunctive relief, actual and punitive damages, reasonable attorney's fees, and costs of suit.

## JURISDICTION & VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States, specifically the Fair Housing Act, 42 U.S.C. §§ 3601-3619.

7.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because they are related to Plaintiff's federal claims and arise out of a common nucleus of operative facts. Plaintiff's state and federal claims form part of the same case or controversy under Article III of the United States Constitution.

8.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims occurred in this District, the property that is the subject of the action is situated in this District, and the Defendants conduct business in this District.

**PARTIES**

9.    Plaintiff is, and at all times relevant herein was, an individual and resident of the State of California.

10.    Defendant Beach Front Property Management, Inc. ("Beach Front") is a stock corporation incorporated in the State of California, with a primary business office located at 1212 Long Beach Boulevard in the City of Long Beach.

11.    Plaintiff is currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend her complaint when their true names, capacities, connections, and responsibilities are ascertained.

12.    Plaintiff is informed and believes, and on that basis alleges that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of

3

First Amended Complaint

each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## FACTUAL ALLEGATIONS

13.    Plaintiff is an individual with physical impairments resulting from Morquio A syndrome, a rare genetic disorder which affects her body weight and size, bones, joints, spine, and vital organs.

14.    Due to her impairments, Plaintiff's physical abilities are substantially limited, and she depends on a power wheelchair to be independently mobile.

15.    Plaintiff's physical impairments and physical needs prevent her from being able to use a manual wheelchair.

16.    Plaintiff has lived with her family in an apartment at a multi-family rental housing complex located at 3223 Bagley Avenue in the City of Los Angeles ("Property") since April 2009.

17.    On or about May 10, 2010, Plaintiff received a power wheelchair through her insurance carrier, which was customized for her body size and physical needs.

18.    Due to existing physical access barriers at the Property, including stairs, Plaintiff's power wheelchair cannot be driven into her unit.

19.    Because of its size and weight, any attempt to carry Plaintiff's power wheelchair into her unit would require multiple people. It would also risk damaging the chair.

20.    Upon receiving the power wheelchair, Plaintiff's parents asked Dickran Ayarian ("Ayarian"), Property Manager at the time, for permission to store and charge Plaintiff's power wheelchair in a locked storage room

First Amended Complaint

located in the parking garage at the Property ("Storage Room").

21.    Plaintiff's power wheelchair can be easily driven in and out of the parking garage area at the ground level of the Property.

22.    Ayarian allowed Plaintiff to store and charge her power wheelchair in the Storage Room as an accommodation for her disability. Ayarian also provided Plaintiff with keys to access the Storage Room as part of this accommodation.

23.    The accommodation requested by, and provided to Plaintiff allowed her access to her power wheelchair freely and independently whenever she needed it, and allowed her to travel in the community independently, without having to rely on or be accompanied by others. Plaintiff's family members would simply assist Plaintiff to the Storage Room, at which point, Plaintiff could use her power wheelchair to independently travel wherever she needed or wanted to go.

24.    The accommodation requested by, and provided to Plaintiff was never for the exclusive use of the Storage Room. Plaintiff has only required a corner of the room to safely store and charge her power wheelchair while she is in her unit.

25.    Consistent with fair housing law, Plaintiff's reasonable accommodation was not conditioned on her paying a cost, fee, deposit, or surcharge.

26.    Plaintiff's reasonable accommodation was in place at the Property for approximately twelve (12) years with no issue or demand for compensation.

27.    Beach Front assumed management responsibilities for the Property on or about December 1, 2021.

28.    Approximately four (4) months after assuming management responsibilities at the Property, Beach Front changed the locks to the Storage

First Amended Complaint

1   Room with Plaintiff's wheelchair locked inside and did not provide Plaintiff
2   with keys to the new locks.

3         29.    Beach Front did not provide notice to Plaintiff about their
4   withdrawal of her reasonable accommodation.

5         30.    Plaintiff's mother, Shahroz Ayaz ("Ayaz") was the first person
6   in Plaintiff's household to discover that the Storage Room locks were
7   changed. Ayaz discovered the change when she couldn't unlock the Storage
8   Room door so that she could take out Plaintiff's power wheelchair for
9   Plaintiff to be able to attend to an errand. Another resident at the property
10  who saw that Ayaz could not open the Storage Room door informed her that
11  the locks had been changed. Plaintiff's mother then returned to the unit and
12  informed Plaintiff and Plaintiff's brother, Arsal Ansari ("Ansari") that the
13  locks had been changed.

14        31.    Ansari then called Marvin Ochoa ("Ochoa"), Sr. District
15  Property Manager for Beach Front, to inform him about Plaintiff not being
16  able to open the Storage Room to access her power wheelchair. Ochoa
17  confirmed that the locks had been changed and informed Ansari that the
18  Storage Room was for management use only.

19        32.    During this call Ansari informed Ochoa about Plaintiff's
20  disability and requested reinstatement of Plaintiff's reasonable
21  accommodation.

22        33.    Ochoa told Ansari that he would be at the property later that
23  day, and would unlock the Storage Room so the power wheelchair could be
24  removed.

25        34.    Ansari approached Ochoa later that day when Ansari saw
26  Ochoa at the Property and communicated his previous request for
27  reinstatement of Plaintiff's reasonable accommodation. Ansari explained the
28  reasons behind Plaintiff's need for accommodation, including that the power

First Amended Complaint

wheelchair must be charged, and the Storage Room has an outlet where it can be plugged in.

35.     Ochoa refused to reinstate Plaintiff's reasonable accommodation and told Ansari to remove the power wheelchair from the Storage Room, otherwise it would be locked inside. Ochoa made it clear that once the Storage Room was locked with the power wheelchair inside, he would not be coming to the Property to provide access whenever Plaintiff required it.

36.     Ansari decided to leave the power wheelchair in the locked Storage Room since it was too heavy and dangerous to carry up the stairs and bring inside the unit.

37.     Approximately two weeks after becoming aware that the Storage Room locks were changed, Ansari approached Ochoa at the Property for a second time. Ansari told Ochoa how long Plaintiff and her family had been tenants at the Property and again explained the need for reinstatement of Plaintiff's accommodation.

38.     Ochoa informed Ansari that Plaintiff's disability accommodation would not be reinstated unless Plaintiff paid a monthly surcharge of $100. Ansari told Ochoa that he would need to discuss this proposed surcharge with his family and would follow up with him at a later time.

39.      After discussing the issue with Plaintiff and their family, Ansari approached Ochoa at the Property and attempted to negotiate a lower surcharge, Ochoa responded by telling Ansari that the monthly fee he was demanding to reinstate Plaintiff's disability accommodation was now $200. Ansari told Ochoa that he would have to think about it and would discuss the increased surcharge with his family.

40.     On or about April 27, 2022, after coming home from work,

Ansari noticed that a truck parked in front of the Property was being loaded with items from the Storage Room. Ansari observed that Plaintiff's power wheelchair was taken out of the Storage Room and was next to the truck about to be loaded on to the truck and hauled away.

41.    Ansari immediately contacted Ochoa to request that he contact the individuals loading the truck to instruct them to not take Plaintiff's power wheelchair and to request that the wheelchair be returned to the Storage Room. Ochoa agreed to return Plaintiff's power wheelchair to the Storage Room but continued to refuse to provide Plaintiff with keys to the Storage Room. Ochoa continued to deny Plaintiff's request that her reasonable accommodation be reinstated and continued to deny her access to her medically necessary wheelchair.

42.    Approximately one week later, Ansari approached Ochoa at the Property and asked that his demand for a monthly surcharge to reinstate Plaintiff's disability accommodation be put in writing.

43.    Ochoa refused the request and demanded that Plaintiff just remove her power wheelchair from the Storage Room. Ansari explained that he would not be able to carry the wheelchair into their apartment because of how much it weighed. Plaintiff's power wheelchair continued to remain locked in the Storage Room.

44.    On May 9, 2022, Ansari sent an email to Maria Alejo ("Alejo"), Regional Property Supervisor for Beach Front which stated:

> "My sister and I reside at 3223 Bagley Ave Apt# 115 Los Angeles CA 90034. We have been living here since summer of 2009 and haven't had anything but a pleasant experience. My sister is 23 years old and fully disabled who heavily depends on a electronically powered wheelchair for her day-to-day activities. The apartment building does not have any access ramps to drive up the wheelchair; therefore, previous management had permitted us a spot to park in one of the

First Amended Complaint

gated storage rooms at ground level.

Now, since the new management has take [sic] over, we have been told to remove the wheelchair from the room that we were previously granted. The wheelchair weighs about 350 pounds and we neither have a place to park the wheelchair at ground level nor an option to drive it up into our apartment unit due to the lack of an access ramp.

We kindly request you to work with us to find a suitable solution for you and for us. We look forward to you [sic] response. You may reach us by e-mail or mail addressed below."

45.    Alejo did not respond to Ansari's May 9, 2022 email.

46.    On May 18, 2022, Ansari sent Alejo a second email, with the same content as his May 9, 2022 email. Later that day, Alejo replied to Ansari in an email which stated: "I believe you have been speaking to Marvin [Ochoa] in regards to this issue. You are welcome to rent out a storage area. We are also ok for you to build a ramp with city approval and using a licensed and bonded contractor."

47.    Plaintiff and her family are low-income tenants. They do not have the means to rent out a storage area. Nor does Plaintiff have the means to pay for a ramp to be constructed at the Property, as suggested by Alejo. Further, upon information and belief, installing a code-compliant ramp at the Property is not feasible.

48.    Plaintiff's family subsequently sought assistance from the Legal Aid Foundation of Los Angeles (LAFLA) and on or about August 3, 2022, LAFLA sent a letter to Alejo on behalf of Plaintiff setting forth Plaintiff's need for, and right to reinstatement of her reasonable accommodation.

49.    On or about August 12, 2022, LAFLA received a letter from Charlie Stein ("Stein"), an attorney with the Davidovich Stein Law Group, stating that his office represented Beach Front. Stein's letter denied

First Amended Complaint

Plaintiff's accommodation request, claiming in part that it was unreasonable, a financial burden, and would convey a preference to Plaintiff.

50.     In or around February 2023, LAFLA sent a letter to Stein that addressed the inaccurate factual and legal assertions made in his August letter and reiterated the request that Plaintiff be reasonably accommodated by allowing her to store her wheelchair in the Storage Room. LAFLA did not receive a response to this correspondence.

51.     On or about September 5, 2023, LAFLA sent another letter to Stein, in a final attempt to resolve Plaintiff's need for an accommodation. That letter again requested that Plaintiff's accommodation be reinstated and detailed the facts and law establishing the accommodation request to be both necessary and reasonable. Stein did not respond to LAFLA's letter, prompting this lawsuit.

52.     Since March 2022, Plaintiff's power wheelchair has remained locked in the Storage Room.

53.      Since March 2022, Beach Front has refused to provide Plaintiff with keys to the Storage Room so she can access her power wheelchair freely and independently as she had in the past.

54.     Since March 2022, Beach Front has refused Plaintiff's request that she be allowed to store and charge her power wheelchair in the Storage Room without surcharge as a reasonable accommodation for her disability.

55.     Plaintiff has been significantly impacted by Beach Front's failure to reinstate her accommodation and refusal to allow her access to her power wheelchair.

56.     The pain, discomfort, and dangers of transportation that Plaintiff must endure as a result of Plaintiff's conduct have increased significantly. Plaintiff's family has a van that has been modified to accommodate her power wheelchair. It allows her wheelchair to be raised

through a ramp and positioned inside so she does not need to be seated on a standard van seat to travel. Without access to her wheelchair, Plaintiff has to sit in the regular van seat. The lack of support causes her heart and lungs to press against each other, causing her serious discomfort.

57. Plaintiff has also lost her independence. When she had access to her power wheelchair, Plaintiff was able to leave her unit on her own, without a family member having to accompany her and carry her. Prior to having her reasonable accommodation taken away, Plaintiff had attended elementary school, middle school, high school, and completed two semesters at Santa Monica Community College independently. While in elementary school, Plaintiff's parents would drop her off and pick her up in her power wheelchair using a wheelchair accessible vehicle. During middle school and high school, a LAUSD school bus that was wheelchair accessible would come to the Property to pick her up and drop her off in her power wheelchair. In college, a blue bus that was wheelchair accessible would come to the Property, pick her up in her power wheelchair, and take her to campus so she could attend classes on her own. Plaintiff can no longer attend school; she would need a family member to go with her to classes and carry her around.

58. Since her accommodation was removed, anytime Plaintiff wants or has to leave her building, a family member must be with her to carry her. As a result, her outings have been reserved for essential outings; she remains largely confined to her unit.  This, in turn, has resulted in emotional difficulty and distress, a diminished quality of life, reduction in physical activity, and weight gain. This has also caused Plaintiff significant embarrassment and feelings of being a burden. Plaintiff's family members have had to miss work and re-arrange their schedules to accompany her on outings and for tasks she is able to complete independently when using her

11

power wheelchair.

59.    Allowing Plaintiff to store and charge her power wheelchair in the Storage Room without surcharge as an accommodation for her disability would not fundamentally alter the nature of Defendants' operations. Nor would providing Plaintiff with keys to the Storage Room so she can access her power wheelchair freely and independently as she had in the past.

60.    Allowing Plaintiff to store and charge her power wheelchair in the Storage Room without surcharge as an accommodation for her disability would not cause Defendant an undue financial burden. Nor would providing Plaintiff with keys to the Storage Room so she can access her power wheelchair freely and independently as she had in the past.

61.    Allowing Plaintiff to store and charge her power wheelchair in the Storage Room without surcharge as an accommodation for her disability would not cause Defendant an undue administrative burden. Nor would providing Plaintiff with keys to the Storage Room so she can access her power wheelchair freely and independently as she had in the past.

62.    Plaintiff has been and continues to be irreparably harmed by Defendants' refusal to provide her with keys to the Storage Room and refusal to allow her to store and charge her power wheelchair in the Storage Room without surcharge as a reasonable accommodation for her disability.

63.    As a person / entity that is in the business of renting housing accommodations, Defendants knew, or should have known that refusing to provide Plaintiff with keys to the Storage Room and allow Plaintiff to store her power wheelchair in the Storage Room without surcharge as a reasonable accommodation for her disability is illegal.

64.    As herein alleged, Defendants' refusal to provide Plaintiff with keys to the Storage Room and allow her to store and charge her power wheelchair in the Storage Room without surcharge as a reasonable

First Amended Complaint

accommodation for her disability was intentional and/or with reckless disregard of Plaintiff's fair housing rights.

65.    As the direct and proximate result of Defendants' refusal to provide Plaintiff with keys to the Storage Room and allow her to store her power wheelchair in the Storage Room without surcharge as a reasonable accommodation for her disability, Plaintiff has suffered damages, including loss of housing opportunity, emotional and physical distress, loss of civil rights, loss of dignity, frustration, difficulty, embarrassment, and inconvenience.

66.    On information and belief, Defendants do not have policies in place for processing accommodation requests made by tenants with disabilities.

67.    Upon information and belief, neither Ochoa nor Alejo have attended training on the fair housing rights of people with disabilities.

68.    The nature of Defendants' discrimination constitutes an ongoing violation, Until Defendants' unlawful practices are enjoined, Plaintiff will continue to be denied full and equal use and enjoyment of her housing and will suffer ongoing and irreparable injury.

69.    The unlawful practices of the Defendants as described herein were and are wanton, willful, malicious, fraudulent, or oppressive; were intended to cause injury to Plaintiff; and/or were done in conscious, callous, reckless, or blatant disregard for the federally protected rights of Plaintiff, entitling her to punitive and/or treble damages.

## FIRST CLAIM
## Fair Housing Amendments Act of 1988
## 42 U.S.C. § 3601 et seq.

70.    Plaintiff hereby re-pleads, restates, re-alleges and incorporates by reference all the allegations contained in the preceding paragraphs.

First Amended Complaint

71.     The Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq*., prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

72.     Plaintiff is, and at all times relevant herein was, an individual with a disability as that term is defined by the FHAA and its implementing regulations. 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201.

73.     Defendants are, and at all times relevant herein were "persons" engaging in the "rental" of "dwellings," as those termed as defined by the FHAA and its implementing regulations. 42 U.S.C. § 3602(b), (d), and (e); 24 C.F.R. §§ 100.20 and 100.201.

74.     The FHAA requires that housing providers make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

75.     Under the FHAA, housing providers may not charge an extra fee or require an additional deposit from tenants with disabilities as a condition of granting a reasonable accommodation. U.S. Department of Housing and Urban Development and the U.S. Department of Justice [on] Reasonable Accommodations under the Fair Housing Act (May 17, 2004) at Question 11.

76.     Under the FHAA, "[a]ccommodations need not be free of all possible cost to the landlord." *Giebeler v. M & B Associates*, 343 F.3d 1143, 1152 (9th Cir. 2003). Financial considerations do not automatically disqualify a requested accommodation. *United States v. California Mobile Home Park Management Co*., 29 F.3d 1413, 1416 (9th Cir. 2003). Further, waiver of generally applicable fees may be required as a part of a necessary reasonable accommodation under the FHAA because "it is clear that

First Amended Complaint

generally applicable fees . . . can interfere with the use and enjoyment of housing by the [disabled]." *Samuelson v. Mid-Atlantic Realty*, 947 F. Supp. 756, 761 (D. Del. 1996).

77.     In acting as herein alleged, Defendants have injured Plaintiff by committing discriminatory housing practices, in violation of the FHAA.

78.     Plaintiff is an "aggrieved" person within the meaning of the FHAA. 42 U.S.C. § 3602(i)(1); 24 C.F.R. § 100.201. Plaintiff has been denied a reasonable accommodation for her disability, impacting her use and enjoyment of her housing.

79.     Defendants' duties under the FHAA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

80.     Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiff prays for judgment as set forth below.

## SECOND CLAIM

## California Fair Employment and Housing Act
## California Civil Code §12955 <u>et seq</u>.

81.     Plaintiff hereby re-pleads, restates, re-alleges, and incorporates by reference all the allegations contained in the preceding paragraphs.

82.     The California Fair Employment and Housing Act (FEHA), Cal. Gov't. Code §12955 *et seq*. prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

83.     Plaintiff is, and at all times relevant herein was, an individual with a disability as that term is defined by California law. Cal. Gov't. Code § 12926.

15

First Amended Complaint

84. Defendants are, and at all times relevant herein were, "owners" of "housing accommodations" within the meaning of the FEHA. Cal. Gov't Code §§ 12927(d) and (e). Each of the Defendants is also a "person" as defined under FEHA. Cal. Gov't Code § 12927(f).

85. Under the FEHA, it is discriminatory for a housing provider to refuse to make reasonable accommodations where necessary to afford an individual with a disability an equal opportunity to use and enjoy a dwelling unit and public and common use areas, or an equal opportunity to obtain, use, or enjoy a housing opportunity. Cal. Code Regs. Tit. 2, § 12176(a) and (c).

86. Under the FEHA, an individual with a disability may request a reasonable accommodation in financial policies or policies that impose a financial burden when such accommodations may be necessary to afford an individual with a disability an equal opportunity. Examples of such economic accommodations may include the waiver of generally applicable fees. Cal. Code Regs. Tit. 2, § 12176(f)(7).

87. Under the FEHA it is unlawful to charge a fee or require an additional deposit or financial contribution as a condition of receiving, processing, or granting a reasonable accommodation. The fact that an accommodation may impose some cost on the person providing the accommodation is not grounds for denial of a request, so long as the cost does not constitute an undue financial and administrative burden. Cal. Code Regs. Tit. 2, § 12180(a)

88. Under the FEHA it is discriminatory for a housing provider to refuse or fail to engage in an interactive process regarding a tenant's reasonable accommodation requests. Cal. Code Regs. Tit. 2, § 12177.

89. In acting as alleged herein, Defendants have injured Plaintiff by committing discriminatory housing practices, in violation of FEHA.

First Amended Complaint

90.    Plaintiff is an "aggrieved" person within the meaning of the FEHA. Cal. Gov't Code § 12927(g). Plaintiff has been denied a reasonable accommodation for her disability, impacting her use and enjoyment of her housing.

91.    Defendants' duties under the FEHA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

92.    Pursuant to Cal. Gov't. Code § 12989.2, Plaintiff prays for judgment as set forth below.

### THIRD CLAIM
### California Unruh Civil Rights Act
### California Civil Code § 51

93.    Plaintiff hereby re-pleads, restates, re-alleges, and incorporates by reference all the allegations contained in the preceding paragraphs.

94.    The Unruh Civil Rights Act ("Unruh Act") provides that individuals with disabilities "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

95.    The Unruh Act applies with "full force to the business of renting housing accommodations." *Marina Point, Ltd. v. Wolfson*, 640 P.2d 115, 120 (Cal. 1982) (internal citations omitted).

96.    Defendants are in the business of renting housing accommodations, and therefore must comply with the provisions of the Unruh Act.

97.    The provisions of the Unruh Act protect substantially the same rights as FHAA and are subject to the same analysis.

First Amended Complaint

98.    Defendants' violation of Plaintiff's rights under FHAA, as set out in Plaintiff's First Claim, also violates Plaintiff's rights under the Unruh Act.

99.    Defendants' duties under the Unruh Act are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

100.    Pursuant to Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

## FOURTH CLAIM

### California Disabled Persons Act

### California Civil Code § 54.1(b)

### *(Statutory Damages and Attorney's Fees Only)*

101.    Plaintiff hereby re-pleads, restates, re-alleges, and incorporates by reference all the allegations contained in the preceding paragraphs.

102.    The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

103.    The CDPA also provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Cal. Civ. Code § 54.1(b)(3)(B).

18

First Amended Complaint

104.   By unlawfully denying Plaintiff's request to store and charge her wheelchair in the storage room without surcharge as a reasonable accommodation for her disability, Defendants violated Plaintiff's rights under the CDPA.

105.   Claims of failure to accommodate under California Civ. Code § 54.1 are analyzed under the same standards as the analogous provisions of the FHAA.  Accordingly, Defendants' violation of Plaintiff's rights under FHAA, as set out in Plaintiff's First Claim, also violates Plaintiff's rights under the CDPA.

106.   Defendants' duties under the CDPA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

107.   Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiff prays for statutory damages and attorneys' fees.

### FIFTH CLAIM

### Negligence (as an alternate/additional theory of liability)

108.   Plaintiff hereby re-pleads, restates, re-alleges, and incorporates by reference all the allegations contained in the preceding paragraphs.

109.   Defendants owed Plaintiff a duty to operate the Rental Property in a manner that was free from unlawful discrimination, and to educate and train themselves and their agents to fulfill that duty.

110.   Defendants negligently violated their duty to Plaintiff by engaging in discrimination against her based on her disability; specifically, by denying her request to store her wheelchair in the storage room without surcharge as a reasonable accommodation for her disability. Defendants'

19

violation of that duty was the result of negligence, including but not limited to:

    a.  The negligent failure to educate and train themselves and their agents regarding the requirements of state and federal fair housing laws; and

    b.  The negligent failure to operate the Property in conformity with accepted industry custom and standards.

111.  As the direct and proximate result of the negligence of Defendants as set forth above, Plaintiff suffered a loss of housing opportunity, emotional and physical distress, loss of civil rights, loss of dignity, frustration, difficulty, embarrassment, and inconvenience.

112.  Wherefore, Plaintiff prays for relief as set forth below.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Issue an injunction pursuant to the FHAA, FEHA and Unruh Act:

    a.  Enjoining Defendants from refusing to make reasonable accommodations in Defendants' rules, policies, practices or services as may be necessary to afford Plaintiff equal opportunity to use and enjoy the Property, and ordering them to:

        i.  Allow Plaintiff to store and charge her power wheelchair in the Storage Room without charging a fee, surcharge, or requiring a payment, an additional deposit, or financial contribution; and

        ii.  Provide Plaintiff with keys to the Storage Room so she can access her power wheelchair freely and independently as she had in the past;

20

First Amended Complaint

      b.  Ordering Defendants to adopt and implement objective, uniform, nondiscriminatory standards in the operation and management of the Property;

      c.  Ordering Defendants to adopt and implement policies and procedures for the processing of reasonable accommodation requests at the Property; and

      d.  Ordering Defendants to submit themselves and their agents to fair housing training, including training on the housing rights of individuals with disabilities.

2.    Award Plaintiff general, compensatory, and statutory damages in an amount within the jurisdiction of this court;

3.    Award Plaintiff punitive damages according to proof;

4.    Award Plaintiff attorneys' fees, litigation expenses, and costs of suit, as provided by law; and

5.    Award such other and further relief as the Court may deem just and proper.

Dated:  February 9, 2024      LEGAL AID FOUNDATION OF LOS ANGELES

By: _____

Manuel Villagomez
Attorneys for Plaintiff

First Amended Complaint

1

## DEMAND FOR JURY TRIAL

2       Plaintiff hereby demands trial by jury.

3

4   Dated:  February 9, 2024      LEGAL AID FOUNDATION OF LOS

5                         ANGELES

6

7                         By:_____.

8                         Manuel Villagomez
                      Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint